IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DARRELL A. REYNOLDS, II, #Y46650, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-01135-SMY |
| | ) | |
| JOHN M. BARWICK, III, | ) | |
| and ROSE MARIE CARSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Darrell A. Reynolds, II, an inmate in the custody of the Illinois Department of Corrections (IDOC), brings this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that allegedly occurred at Pinckneyville Correctional Center. Plaintiff claims he was denied mental health treatment before attempting suicide on November 22, 2024. He seeks money damages from Rose Marie Carson (mental health director) and John Barwick, III (warden).

The Second Amended Complaint (Doc. 14) is now before the Court for review under 28 U.S.C. § 1915A. Any portion that is legally frivolous or malicious, fails to state a claim, or requests money damages from an immune defendant must be dismissed. *Id*.

## Second Amended Complaint

Plaintiff makes the following allegations in the Second Amended Complaint (Doc. 14, pp. 7-12): Plaintiff was diagnosed with bipolar disorder and posttraumatic stress disorder in 2017. *Id*. at 7. He took Prozac (60 mg daily) to manage his condition thereafter. Even so, he attempted suicide repeatedly, and his suicide attempts are well-documented in IDOC records dating back to 2021. *Id*.

1

Plaintiff also began experiencing homicidal thoughts in September 2024. He was aware that homicidal thoughts were a side effect of his psychotropic medication, and reported this new symptom in an urgent request for mental health evaluation with his assigned mental health professional (MHP) Theresa Debord in September or October 2024. MHP Debord finally met with Plaintiff on October 22, 2024. She attributed his homicidal thoughts to anxiety unrelated to Prozac and added a prescription for Lexapro (5 mg). Lexapro only intensified his homicidal thoughts and caused a manic episode. *Id*.

During the manic episode on November 1, 2024, Plaintiff addressed a custody request slip to MHP Debord. He explained the Lexapro only made things worse: "That Lexapro shit ain't workin! I'm bout ready to kill a mothafucka! Is that what you want from me?!! I will strangle my dirty ass cellee!!! I promise you I will kill him to make my point!" *Id*. Instead of initiating a crisis intervention in compliance with Illinois Administrative Directive 04.04.102, MHP Debord delayed taking action to treat Plaintiff until November 4, 2024.

Internal Affairs Officer Alexander Rodman was assigned to investigate the matter. Rodman initially cuffed Plaintiff and took him to meet with MHP Debord on November 4, 2024. *Id*. at 6-7. After Plaintiff explained that Lexapro induced a manic episode, MHP Debord agreed that the new medication was detrimental to his bipolar disorder and that his homicidal thoughts were a likely side effect of Prozac. MHP Debord then prescribed a mood stabilizer, *i.e.*, Depakote (500 mg twice daily). When Plaintiff told Rodman he wanted to avoid hurting anyone and simply needed mental health treatment, Rodman refused to acknowledge he was seriously mentally ill, disregarded his symptoms, and downplayed his need for a crisis team. Instead, Rodman issued him a disciplinary ticket for the following infractions: 601 – attempt; 100 – violent assault of any person; 103 – extortion and bribery; and 206 – intimidation or threats. *Id*. at 7.

2

Plaintiff was then placed in segregation where he received two additional false tickets for refusing a cellmate on November 7 and November 8, 2024. He was threatened with a third ticket for the same offense on November 11, 2024. At his disciplinary hearing on Ticket #202403677/1-PNK on November 12, 2024, Lieutenant Gregory Little and Kelsey Smith disregarded written evidence of his mental health crisis and his manic episode before finding him guilty of all offenses. Plaintiff was initially punished with segregation (6 months), loss of good conduct credit (6 months), contact visit restriction (6 months), commissary restriction (3 months), and C grade (3 months). *Id*. at 8. His punishment was later reduced to segregation (3 months).

The stress from Plaintiff's untreated mental health issues, disciplinary action, and punishment triggered a deep depression that caused suicidal thoughts. From November 13-19, 2024, Plaintiff repeatedly requested a crisis team, but his requests were ignored. On November 20, 2024, Plaintiff wrote Emergency Grievance #K59-1124-4636 to Director Carson and Warden Barwick. He described "aggressive" homicidal thoughts, his manic episode, and his resulting disciplinary action (Ticket #202403677/1-PNK). He also warned of an imminent risk of self-harm. Plaintiff received no crisis intervention and no response to the emergency grievance.

Plaintiff attempted suicide on November 22, 2024, by overdosing on Depakote that he received at medication line. *Id*. According to IDOC records, security staff found him unresponsive in his cell around 10:30 a.m. and carried him to the health care unit (HCU). Narcan was used to revive him around 12:21 p.m. He was then sent to Pinckneyville Community Hospital and treated for an overdose by Dr. Walter Beusse. He was released around 12:46 a.m. on November 23, 2024. *Id*. at 9. When he returned to the prison around 1:20 a.m., Plaintiff was finally placed on crisis watch.

Although Director Carson was notified of Plaintiff's serious mental health needs and significant risk of self-harm on November 20, 2024, the defendant failed to protect him. *Id*. at 10-11. Carson falsely claimed that Plaintiff "was placed on crisis watch on November 22, 2024." *Id*. at 11. But, medical records confirm he was not placed on crisis watch until after he was treated for a suicidal overdose on November 22-23, 2024 and returned from the hospital on November 23, 2024. *Id*. at 11-12.

Warden Barwick reviewed Plaintiff's emergency grievance dated November 20, 2024 and deemed it a non-emergency on November 21, 2024. *Id*. at 9. After learning of his inadequate mental health treatment, recent manic episode, homicidal thoughts, past suicide attempts, and present suicide risk, Warden Barwick took no steps to initiate a crisis intervention to prevent a substantial risk of serious self-harm or attempted suicide by Plaintiff. The warden failed to follow the suicide protocol outlined in Illinois Administrative Directive 04.04.102.II.G.2. *Id*. at 9-12.

Based on the allegations, the Court designates the following claim in the *pro se* Second Amended Complaint:

> **Count 1:** Eighth Amendment claim against Defendant Barwick and Director Carson for denying Plaintiff's request for crisis intervention and/or mental health treatment before he attempted suicide on November 22, 2024.

Any other claim mentioned in the Second Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim for relief if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff refers to the following individuals in his statement of claim without naming them as defendants: Theresa Debord, Alexander Rodman, Gregory Little, Kelsey Smith, and Walter

Beusse, among others.  Federal Rule of Civil Procedure 10(a) requires a plaintiff to name all parties in the case caption of the Complaint.  Because Plaintiff excluded these individuals from his list of defendants, all claims against them are considered **DISMISSED without prejudice**.  *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005).

### Discussion

The Eighth Amendment protects inmates against cruel and unusual punishment.  *See* U.S. CONST., amend VIII.  A plaintiff asserting a constitutional claim against prison officials for failing to protect him from a serious risk of harm must allege that each defendant acted with deliberate indifference to his health or safety.  *Kupsky v. McLaren*, 748 F. App'x 74 (7th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Plaintiff's diagnosed bipolar disorder, past suicide attempts, present manic episode, deep depression, homicidal thoughts, and suicidal ideations constitute a sufficiently serious risk of harm under the Eighth Amendment.  *Kupsky*, 748 F. App'x at 76 (citing *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012)).

With respect to deliberate indifference, Plaintiff alleges that Warden Barwick and Director Carson ignored his specific complaints of impending self-harm just before he attempted suicide. These allegations are sufficient to state a colorable deliberate indifference claim against each of these defendants.  *See Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (citing *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (Deliberate indifference occurs when a prison official is aware a prisoner "may imminently seek to take his own life and . . . fail[s] to take reasonable steps to prevent the inmate from performing this act."). As such, Count 1 survives screening against Warden Barwick and Director Carson, in their individual capacities.

**Disposition**

The Second Amended Complaint (Doc. 14) survives screening pursuant to 28 U.S.C. § 1915A. **COUNT 1** will proceed against **BOTH DEFENDANTS**, in their individual capacities.

The Clerk shall prepare for Defendants **JOHN M. BARWICK, III,** and **ROSE MARIE CARSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 14), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the

costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED**.

**DATED: 5/13/2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.